83 F.3d 434
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 John WILLIAM, Petitioner-Appellant,
v.
Harold NYE, Warden; The Attorney General of the State of
Kansas, Respondents-Appellees.
 No. XX-XXXXXXX.
 United States Court of Appeals, Tenth Circuit.
 April 23, 1996.
 ORDER AND JUDGMENT[1]
 
 1
 Before HENRY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and KERN, District Judge.[2]
 
 
 2
 This is an appeal from a judgment of the United States District Court for the District of Kansas denying a state prisoner's petition for habeas corpus filed pursuant to 28 U.S.C. 2254. We affirm.
 
 
 3
 In the District Court for Douglas County, Kansas, John William was charged with, and convicted of, first degree murder in connection with the death of Richard Settlemyre, a nine-year-old boy. William was sentenced to life imprisonment. On direct appeal, the Supreme Court of Kansas affirmed. State v. William, 807 P.2d 1292 (Kan.1991). The background facts are fully set forth in the opinion of the Supreme Court of Kansas and will not be repeated in any great detail here.
 
 
 4
 On appeal to the Supreme Court of Kansas, William raised seven issues. Included therein were the following: (1) the state district court erred in admitting into evidence at trial William's confession; (2) the state district court erred in admitting into evidence at trial various statements made by William prior to the time he was given a Miranda warning; and (3) the district court erred in holding that William was mentally competent to stand trial.[3] These three matters, as well as the other issues raised, were considered in detail and in each instance rejected.
 
 
 5
 On June 18, 1993, some two years after the Supreme Court of Kansas had affirmed William's conviction and sentence, William filed a petition for habeas corpus under 28 U.S.C. 2254 in the United States District Court for the District of Kansas. Named as respondent was Harold Nye, the Superintendent of the Larned Correctional Mental Health Facility in Larned, Kansas, where William was confined.
 
 
 6
 In his petition, William alleged that he was in state custody in violation of the Fifth and Fourteenth Amendments to the United States Constitution because of the following: (1) his confession was involuntary; (2) his pre-Miranda statements were improperly admitted into evidence at state trial; and (3) he was not mentally competent to stand trial.
 
 
 7
 Nye filed an Answer and Return to William's petition. Upon the record as thus made, the district court denied William's petition. The district court's Memorandum and Order appears as William v. Nye, 869 F.Supp. 867 (D.Kan.1994). In denying William's petition for habeas corpus, the district court carefully considered and rejected each of the three issues urged.
 
 
 8
 On appeal, William argues that the federal district court erred: (1) in concluding that his confession was voluntary; (2) in holding that his pre-Miranda statements to the police were admissible; and (3) in holding that he was mentally competent to stand trial. We shall consider these three matters in reverse order, since William's mental state is involved in his argument relating to his confession and pre-Miranda statements.
 
 I. Competency to Stand Trial
 
 9
 William, age 29 at the time of the murder, admittedly had a long history of mental illness. We agree with the observation of the federal district court that this is an "extremely close case of a criminal defendant whose mental condition presented severe intellectual limitations and whose emotional and cognitive immaturity presented particular concerns." William, 869 F.Supp. at 874. However, as recognized by the federal district court, the fact that this may be a "close case" does not necessarily mean that the state trial court violated William's constitutional rights by finding William mentally competent to stand trial.
 
 
 10
 As indicated by the Supreme Court of Kansas in State v. William, supra, the state trial court gave this particular matter careful consideration, holding four separate hearings into William's competency to stand trial. The first hearing was held on August 12, 1988. The evidentiary matter before the state trial court at that hearing is summarized in the opinion of the federal district court, 869 F.Supp. at 871-72. At the conclusion of that hearing, the state district court found William incompetent, as of that time, to stand trial and ordered William sent to the Larned State Hospital for treatment.
 
 
 11
 A second competency hearing was held in the state trial court on November 23, 1988. Following that hearing, the state district court found William competent to stand trial. However, on March 9, 1989, following a third hearing, the state trial court found William incompetent to stand trial and returned him to the Larned State Hospital.
 
 
 12
 A fourth and final competency hearing was held on October 31, 1989. The testimony adduced at that hearing is summarized by the federal district court, 869 F.Supp. at pp. 872-73. At that hearing, the government presented testimony from two psychologists and two psychiatrists, all from the Larned State Hospital. They concluded that William was mentally competent to stand trial. William's attorney also called several witnesses, who testified that William was not mentally competent to stand trial.
 
 
 13
 Based then on conflicting testimony, the state trial court held that William was competent to stand trial and the trial commenced on November 7, 1989. On one occasion shortly after the trial began, William refused to leave his cell in a dispute over the use of restraints in the courtroom, whereupon defense counsel demanded another competency evaluation. The state trial judge took what the federal district court characterized as an "unusual step" by talking to William in his cell in order to determine whether the proceedings should continue. After doing this, the state trial judge found William still competent to stand trial, and the trial resumed to conclusion.
 
 
 14
 When considering a petition for habeas corpus challenging a state court conviction, a federal court shall presume the state court's resolution of a factual issue to be correct, unless the federal court, upon consideration of the relevant part of the record, "concludes that such factual determination is not fairly supported by the record." 28 U.S.C. 2254(d)(8).
 
 
 15
 A defendant's competency to stand trial in a criminal proceeding is generally a factual issue subject to the presumption of correctness under 2254. Lafferty v. Cook, 949 F.2d 1546, 1549 (10th Cir.1991). It is true that in Lafferty we reversed the district court's determination that the defendant in a criminal proceeding was mentally competent to stand trial. However, the reason therefor was that the district court in that case used an incomplete standard for determining mental competence. Lafferty, 949 F.2d at 1550-51 (citing Dusky v. United States, 362 U.S. 402 (1960)). That is not our case. In this regard, the federal district court in the present proceeding specifically found that the state trial court "applied the appropriate standard of whether petitioner's mental condition would significantly interfere with his communication with his attorneys." William, 869 F.Supp. at 874. That finding, so far as we can tell, is not challenged on appeal.
 
 
 16
 Like the federal district court, we believe the record in the instant case fairly supports the state trial court's determination that William was mentally competent to stand trial. A "close case" perhaps, but the state trial court's determination is still fairly supported by the record. In this regard, see the federal district court's analysis of the record as made in the state trial court concerning William's competency to stand trial, William, 869 F.Supp. at 871-74.
 
 II Pre-Miranda Statements
 
 17
 Richard Settlemyre's father gave Richard permission to go fishing in the Kansas River with William on July 12, 1988, with instructions to William to see that the nine-year-old boy was home by 7:00 p.m. Richard did not return home that evening or the next day, and Richard's mother reported his absence to the Lawrence Police Department on the morning of July 14, 1988. The police launched an immediate search for the missing boy and at about 10:30 a.m. on the 14th located William walking near the Kansas River. An officer called to William, a homeless person who lived under a bridge, who readily came to the officer and his fellow officer. William was told that Richard had been reported missing, and William, in turn, stated that he had walked Richard home around 7:00 p.m. on the evening of the 12th. William then accompanied the officers and showed them the places where he and Richard had been fishing and the route they had taken when he walked Richard home.
 
 
 18
 About noon on the same day, the officers took William to the Douglas County Law Enforcement Center for an interview. About 3:00 p.m., after a lunch-break, the officers and William left the Center to look at other places along the river where Richard might have gone. They returned to the Center around 4:00 p.m. and William was further interviewed.
 
 
 19
 About 6:50 p.m. one of the officers learned that a body had been found in the Kansas River. At this point, William was given a Miranda warning. William, as he had previously done, told the officers he wanted to help and was willing to continue talking to the officers and did not want to talk with an attorney. During the ensuing interview, he alternatively claimed that a "black man" had decapitated Richard, and that Richard had drowned.
 
 
 20
 At about 2:30 a.m. on July 15, 1988, the police obtained a search warrant to perform a "sexual assault kit" on William. He was then taken to Lawrence Memorial Hospital for execution of the search warrant. Shortly thereafter, William again advised an officer that Richard had drowned. When the officer replied that an autopsy would show whether the death was indeed caused by drowning, William said, "Okay, I killed him," and proceeded to say that he had gone "berserk" and killed Richard after a two-year struggle against a desire for sexual activity with the boy. At this point, William, who, as indicated, had previously stated that he did not want to see an attorney, stated that he did want an attorney, and further questioning stopped.
 
 
 21
 As concerns William's pre-Miranda statements to the police, the federal district court found that William was not "in custody" during that period of time, but to the contrary was voluntarily assisting the officers in their search for a missing person. Such finding is, in our view, supported by the record and supports the federal district court's conclusion that William was "not entitled to habeas relief on that ground." William, 869 F.Supp. at 871. We also note that prior to his Miranda warning, William made no "confession," and that his pre-Miranda statements to the police were exculpatory in nature; i.e., he was trying to assist the police in locating a missing child who was last seen with him. Such being the case, any possible error in this regard would be harmless.
 
 III. Voluntariness of the Confession
 
 22
 As indicated, the police gave Miranda warnings to William at about 7:00 p.m. on July 14, 1988, when they learned that a body had been found in the Kansas River. Around 4:00 a.m. on July 15, 1988, William was taken to the Lawrence Memorial Hospital for execution of the sexual assault kit. William confessed to killing Richard around 5:30 a.m. During that time interval, the police continued to question William, who first said that a "black man" had decapitated Richard and later stated that the boy had drowned. During this time, William was asked on more than one occasion if he wanted to see a lawyer, and he indicated he did not. When William did indicate that he wanted to see a lawyer, the interrogation stopped.
 
 
 23
 Appellant argues that the voluntariness of William's confession is fatally undermined by his severe and observable mental problems, which were known to, and exploited by, the police during the long interrogation. Certainly the circumstances surrounding William's confession, especially William's mental limitations, should be considered and were in fact considered by the state trial court, as well as the federal district court in the habeas proceeding. In this regard, the federal district court, citing Colorado v. Connelly, 479 U.S. 157 (1986), stated that "[w]hile the mental condition of a confessant is relevant, it is not determinative," and that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' " William, 869 F.Supp. at 870. The federal district court further spoke as follows:
 
 
 24
 The record before the court shows the petitioner was alert and oriented throughout the time he was questioned by police and that he was able to communicate in a reasonable manner. Petitioner told police he was able to read and write and that he had completed the 10th or 11th grade, and at the time the questioning of petitioner began, the police had only limited knowledge of his background.
 
 
 25
 While the roughly 19 hour period petitioner spent with police is somewhat troubling, it must be noted that the investigation of Richard's disappearance was unfolding rapidly during this time, and that at least the first few hours of petitioner's presence with police were spent establishing Richard's habits and retracing the events of July 12, when he was last seen alive. During this time, petitioner was engaged in showing police areas frequented by Richard, and the petitioner was provided food and cigarettes at intervals and permitted breaks. While it is true petitioner was not advised he was free to leave, it is likewise true he did not ask to do so or to contact anyone else, such as a friend or family member. Finally, there is an absence of any evidence of coercive behavior by police. Petitioner was not subjected to threats or physical abuse, and officers were cognizant of his rights, stopping the questioning when it reasonably appeared petitioner desired to seek counsel. William, 869 F. Supp at 871.
 
 
 26
 It was on this basis that the federal district court found that William's confession was voluntary and that none of William's constitutional rights had been violated by admitting his confession into evidence at the state trial. We are in accord.
 
 
 27
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Terry C. Kern, District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [3]
 William entered a plea that he was not guilty because of insanity at the time of the alleged murder, which was rejected by the jury